

FILED

SEP 2 1 2006

CLERK

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

|  |  |
|---|---|
| CHARLES VAN WARDHUIZEN, | CIV 05-4166 |
| Plaintiff, | MEMORANDUM OPINION AND ORDER |
| -vs- |  |
| WARDEN WEBER, in his individual and official capacity; DR.REGIER, in his individual and official capacity; MARK LEONARD, in his individual and official capacity; C.O. L. LEE, in her individual and official capacity; MARY PETRIK, in her individual and official capacity; LORI STENHAGEN, in her individual and official capacity; JESSICA STEVENS, in her individual and official capacity; BOB GILLES, in his individual and official capacity; CARRIE RIVAS, in her individual and official capacity; CARRIE MORTENSON, in her individual and official capacity; JESSICA STUBBE, in her individual and official capacity; and HOLLY STURZENBECHER, in her individual and official capacity, |  |
| Defendants. |  |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Plaintiff, Charles Van Wardhuizen, is proceeding in forma pauperis in this action brought under 42 U.S.C. § 1983. Defendants Warden Douglas Weber, Dr. Eugene Regier, Mark Leonard, Mary Petrik, Lori Sternhagen, Jessica Stevens, Bob Gilles, Carrie Rivas, Jessica Stubbe,  Lisa Lee

and Holly Sturzenbecher [1] have moved for Summary Judgment. Doc. 58 and 70. Plaintiff has resisted the motion for summary judgment. Doc. 65, 68, and 75. For the reasons set forth in this Memorandum Opinion and Order, Defendants' Motions for Summary Judgment are granted.

## FACTUAL BACKGROUND

Plaintiff, Charles Van Wardhuizen, is an inmate in the custody of the South Dakota Department of Corrections. Defendant Douglas Weber is Warden of the South Dakota State Penitentiary. Defendant Eugene Regier is a medical doctor, employed by the South Dakota Department of Health, who provides medial care to inmates at the South Dakota State Penitentiary. Defendant Mark Leonard is a registered nurse employed by the South Dakota Department of Health who provides medical care to inmates at the South Dakota State Penitentiary. Defendants Bob Gilles, Carrie Rivas, Jessica Stubbe, Mary Petrik, Lori Sternhagen,   Jessica Stevens and Holly Sturzenbecher are employees of the Department of Health who have distributed medications to Plaintiff. Defendant Lisa Lee is a corrections officer at the South Dakota State Penitentiary.

Plaintiff made a request on August 3, 2005, to meet with a nurse regarding the swelling in one of his testicles and his genital warts. Plaintiff was then seen at the Department of Health Correctional Healthcare facility on August 10, 2005, complaining of discomfort in his left testicle. Arrangements were made for Plaintiff to see Dr. Regier on August 11, 2005, for further examination. Plaintiff received a scrotal ultrasound on August 11, 2005. On August 30, 2005, Plaintiff discussed the ultrasound with a Physician's Assistant who noted that she would discuss with Dr. Herbert Saloum whether to proceed with additional testing. The Physician's Orders for August 30, 2005, discloses a prescription for "Tylenol 325 mg po QID/PRN x 3 days." The Progress notes for September 2, 2005, note that appointment was scheduled for Plaintiff with a urologist for September 6, 2005. The urologist's notes for September 6, 2005, state, "Dr. Robbins also reviewed the ultrasound films and visited with the patient about the risks of surgical exploration and the very low likelihood of underlying malignancy, though it is possible." On September 20, 2005, Plaintiff received from the Physician's Assistant a full physical in preparation for a "left scrotal exploration with epididymal biopsy  possible orchiotomy." Plaintiff was also examined by a urologist on

---

[1] Carrie Mortensen no longer works at the South Dakota Penitentiary and has not been served.

September 22, 2005.

On September 30, 2005, Plaintiff underwent a same-day surgical procedure at Avera McKennan Hospital in Sioux Falls, South Dakota to remove a mass from one of his testicles. Plaintiff was returned to Unit C of the South Dakota State Penitentiary that same day. Plaintiff contends that on the afternoon of September 30, 2005, he first asked Officer Lisa Lee and then a nurse for ice to reduce swelling that resulted from the surgery. Plaintiff contends Officer Lisa Lee advised she was unsure where to get ice and Plaintiff was later told that he needed a medical order to obtain ice. Plaintiff's post-operative instructions did not call for ice.

The only prescription noted under the "Medications" portion of Plaintiff's post-operative instructions is Cipro, but written above the "Additional Instruction" portion of the post-operative instructions is: "Dr. recommends toradol 10 mg p.o. for 6 lu. Prn pain." Plaintiff has provided a pharmaceutical information sheet which advises that Toradol is an anti-inflammatory drug used for short term pain relief. The "Activity" portion of the post-operative instructions provided for "activity as tolerated." The "Regarding Anesthesia" portion of the post-operative instructions provided: "Rest at home with moderate activity."

On October 1, 2005, Plaintiff sent the following note: "Could I get an ice pack please. I had surgery yesterday. I'm bleeding, I'm in pain & can't get my meds." On October 1, 2005, Defendant Mark Leonard, as a nurse at the Penitentiary, issued a medical order that Plaintiff receive ice up to four times daily. Plaintiff contends that although a guard brought him a large bag of ice on October 2, 2006, Plaintiff otherwise had to walk to the Jameson Annex to receive his ice. Inmates at the South Dakota Penitentiary with a medical order for ice generally obtain the ice themselves, or obtain the ice with the assistance of a corrections officer. Defendant Leonard does not personally deliver ice to inmates outside of health services.

Plaintiff was housed in Unit C, a minimum security unit, from September 30 through October 5, 2005. The closest place for Plaintiff to obtain ice was from the kitchen in the Jameson Annex. The entrance to the Jameson Annex is located approximately 75 yards from Unit C. Although Plaintiff contends that walking was quite painful, Defendant Leonard was aware of no medical reason why Plaintiff could not obtain ice for himself in October of 2005.

When Plaintiff was returned to the Penitentiary following the same-day surgery on

3

September 30, 2005, he had a prescription for an antibiotic, Cipro. He was to receive the Cipro twice daily until October 5. The Physician's orders for September 30, 2005, also disclose a prescription for "Ibuprofen 600 mg T10 prn x 14 days." In addition, the Physician's orders for October 2, 2005, prescribe "continue IBP as ordered" and "DARVOCET N100 TID/PRN x 5 days." "TID" means three times daily.

The medication administration record reveals that Plaintiff received Cipro as prescribed, except for the morning of October 2, 2005, when he was a "no show" for the medication. Plaintiff asserts that he did not show for the morning medications because he was in pain and was feeling sick. Defendant Bob Gilles delivered the Cipro on the mornings on October 1 and October 3, 2005. Defendant Carrie Rivas delivered the Cipro at supper on October 1, 2005. Defendant Jessica Stevens delivered the Cipro on the morning on October 4 and October 5, 2005. Defendant Jessica Stubbe delivered the Cipro at supper on October 4, 2005.

The medication administration record reveals that Plaintiff received Ibuprofen from October 1, 2005, through October 13, 2005. The Ibuprofen was given to Plaintiff by Defendants Bob Gilles, Rose Garrison, and Carrie Rivas on October 1, 2005. On October 2, 2005, Plaintiff was a "no show" for the medication in the morning, but received it at noon from Defendant Angela Auch. Although the medical reports indicate that Plaintiff then received Ibuprofen as a self-med, meaning that he was given a card with pills as prescribed and instructions on when it was to be taken, Plaintiff denies that he received a card with pills and instructions. Plaintiff contends that although Defendant Mark Leonard gave him the option to purchase a med card for Ibuprofen on his October 1, 2005, sick call, Plaintiff declined the med card as he "had little money at that time."

Plaintiff was also prescribed Darvocet, which could be administered at his request up to three times daily. On October 2, 2005, Plaintiff received Darvocet at 10:30 a.m. from Defendant Angela Auch and at 6:00 p.m. from Carrie Mortenson. On October 3, 2005, Plaintiff received Darvocet at 6:00 a.m., 10:00 a.m., and 9:00 p.m. from Defendants Bob Gilles, Jessica Stubbe, and Jessica Stevens. On October 4, 2005, Plaintiff received Darvocet at 6:00 a.m., 10:00 a.m., and 6:00 p.m. The medication was administered by Jessica Stevens at 6:00 a.m., and Jessica Stubbe at 10:00 a.m. and 6:00 p.m. On October 5, 2005, Plaintiff received Darvocet at 6:00 a.m. and 5:00 p.m. from Defendants Jessica Stevens and Angela Auch. On October 6, 2005, Plaintiff received Darvocet at

6:00 a.m.,10:30 a.m., and 6:00 p.m. from Defendant Holly Sutrzenbucher and another employee.

On October 1, 2005, Plaintiff's biopsy lab work was completed at Avera McKennan Hospital, but the hospital did not send a copy of the pathology report to health services at the Penitentiary until October 25, 2005. On October 12, 21, 25, and 27, 2005, Plaintiff filed South Dakota State Penitentiary request slips seeking to learn his biopsy result. On October 25, 2005, the Penitentiary first received a fax from the hospital with the biopsy results. Defendant Dr. Regier initialed the document when he reviewed it on October 28, 2005. On October 28, 2005, Plaintiff met with a urologist, and was told that the results of his biopsy were negative. On October 31, 2005, the biopsy results were again faxed to health services at the Penitentiary and on November 2, 2005, were again reviewed by Defendant Dr. Regier. On November 6, 2005, Plaintiff met with Colleen Tommerassen, a registered nurse, to again discuss the biopsy results.

The Department of Corrections has an established administrative remedy procedure that was in place throughout October, 2005. Although the Administrative Remedy Coordinator for the Penitentiary submitted an affidavit stating that she had reviewed all administrative remedy filings from August through November of 2005 and found no record of any administrative filing for Plaintiff, Plaintiff disputes that he failed to follow the procedure. Plaintiff maintains that he filled out the appropriate paperwork and turned the paperwork into the Unit Coordinator, Tom Hocker. Plaintiff asserts that Tom Hocker would not accept the grievances and told Plaintiff that he was "just griping." Plaintiff maintains that he was assisted in following the administrative process by inmate Scott Mollman. Scott Mollman submitted an unverified statement in Plaintiff's behalf in which he states that he witnessed Plaintiff fill out and turn in to the Unit Coordinator both an informal resolution request and an administrative remedy request.

Request for Attorney

In Plaintiff's Response to the Motion for Summary Judgment (Doc. 65) Plaintiff states that he is again asking for an attorney for assistance in gathering facts and presenting them in a more professional manner. There is neither a constitutional nor a statutory right to appointed counsel in civil cases. *Phillips v. Jasper County Jail*, 437 F.3d 791, 794 (8th Cir. 2006). A court may appoint counsel when an indigent prisoner pleads a nonfrivolous cause of action. *See* 28 U.S.C. § 1915(e). In determining whether counsel should be appointed in a civil case this Court considers the factual

complexity of the issues, the ability of the indigent person to investigate the facts, the existence of conflicting testimony, the ability of the indigent person to present his claims and the complexity of the legal arguments. *Phillips v. Jasper County Jail*, 437 F.3d at 794.

Neither the facts nor the legal arguments presented in this case are complex. Plaintiff was able to gather medical records and prison policies and present the same to the Court. Plaintiff was also able to respond to the factual statements and legal arguments presented by Defendants. Although there is some conflict in the facts of this case, the Court is reviewing those facts pursuant to the principles of summary judgment. For these reasons the requests for counsel are denied.

Motion to Strike Unsworn Statement of Scott Mollman

Defendants move to strike the unsworn statement of inmate Scott Mollman. Doc. 73. Defendants argue that unsworn statements do not meet the requirements of FED. R. CIV. P. 56(e)[2]. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158 n.16 (1970). Defendants further argue that although pro se litigants are not held to the same standards of compliance with formal or technical pleading rules as are applied to attorneys, they may not oppose summary judgments by the use of unsworn materials. In response to the motion to strike, Plaintiff contends that he was unable to procure a sworn statement form inmate Scott Mollman because the Unit Coordinator, the subject of Mollman's statement, is also the Notary Public for Plaintiff's Unit. Doc. 76.

Although the Court appreciates the value of all litigants abiding by the requirements of FED. R. CIV. P. 56(e), the Court also recognizes the special circumstances faced by Plaintiff in this matter. In addition, the unsworn statement of inmate Scott Mollman merely corroborates the statements Plaintiff made in his Verified Complaint in which Plaintiff alleges that he filed both an informal and formal grievance[3]. Doc. 1. The motion to strike the unsworn statement of Scott Mollman is denied.

---

[2]FED. R. CIV. P. 56(e) provides in part: "Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith."

[3]Since Plaintiff has offered evidence that he availed himself of the administrative remedy procedure at the South Dakota State Penitentiary, Defendants are not entitled to summary judgment on the basis that Plaintiff failed to exhaust his administrative remedies.

*See Williams v. Carter*, 10 F.3d 563, 567 (8th Cir. 1993)("Pleadings and other documents filed by pro se litigants should be treated with a degree of indulgence, in order to avoid a meritorious claim's being lost through inadvertence or misunderstanding.").

General Principles of Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56 ( c). A complaint that is signed and dated as true under penalty of perjury constitutes a verified complaint, and a verified complaint is the equivalent of an affidavit for purposes of summary judgment. *Roberson v. Hayti Police Dep't*, 241 F.3d 992, 994-95 (8th Cir. 2001). However, if the allegations in the verified complaint consist of nothing more than conclusory allegations, they are insufficient to overcome a motion for summary judgment. *See Roberson v. Bradshaw*, 198 F.3d 645, 647 (8th Cir. 1999).In ruling on a motion for summary judgment, the Court is required to view the facts in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences to be drawn from the underlying facts. *AgriStor Leasing v. Farrow*, 826 F.2d 732, 734 (8th Cir. 1987). The moving party bears the burden of showing both the absence of a genuine issue of material fact and its entitlement to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc*, 477 U.S. 242 (1986).

## WHETHER THE DEFENDANTS WERE DELIBERATELY INDIFFERENT TO PLAINTIFF'S SERIOUS MEDICAL NEEDS?

Prison officials are prohibited by the Eighth Amendment from "unnecessarily and wantonly inflicting pain" on an inmate by acting with "deliberate indifference" to an inmate's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "This conclusion does not mean, however, that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." 429 U.S. at 105. A prisoner must show more than negligence, gross negligence or medical malpractice to establish a violation of the Eighth Amendment. *Phillips v. Jasper County Jail*, 437 F.3d at 795; *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997). To prevail on a claim of deliberate indifference, under 42 U.S.C. §1983, a plaintiff must prove: (1)

7

he suffered objectively serious medical needs; and (2) the prison officials actually knew but deliberately disregarded those needs. *See Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997).

"To constitute an objectively serious medical need or a deprivation of that need, [the Eighth Circuit has] repeatedly emphasized that the need or the deprivation alleged must be either obvious to the layperson or supported by medical evidence, like a physician's diagnosis." *Aswegan v. Henry*, 49 F.3d 461, 464 (8th Cir. 1995). Since Plaintiff had undergone a medical procedure, was prescribed medication, and complained of bleeding and pain, he has established a serious medical need.

To establish deliberate indifference to a serious medical need a prisoner must show that the medical provider knew of and disregarded a serious medical need. *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000). "Deliberate indifference may be manifested by prison doctors in responding to the prisoner's needs or by prison officials in intentionally denying or delaying access to medical care or intentionally interfering with prescribed treatment." *Meloy v. Bachmeier*, 302 F.3d 845, 849 (8th Cir. 2002).

Plaintiff contends that his rights were violated when he did not receive pain medication until October 1, 2005, when he was told that he could only have the pain medication three times a day "despite the pills being labeled 'as needed,'" and when he did not receive the Toradol. Plaintiff contends that he vividly recalls Defendant nurse, Mark Leonard, stating "I did not know you were out of the hospital." Doc. 65. Viewing the evidence in the light most favorable to Plaintiff, he has demonstrated nothing more than negligence regarding the delay in administering the medicine. Also, Plaintiff is mistaken in his belief that the defendants who administered the medication could or should have given him as much of the pain medication as he would request. Further, in consideration of the medication actually administered and the ice that was made available to Plaintiff, the failure to give Plaintiff Toradol does not approach what is required to show an Eighth Amendment violation. Plaintiff has failed to show that any official intentionally denied or delayed access to medical care with regard to administering medication.

Plaintiff's claim that the failure to deliver the ice to him constitutes deliberate indifference also fails. The ice was prescribed to Plaintiff the same day he made the written request for the same, and there is no evidence that requiring Plaintiff to walk the 75 yards to pick up the ice or to arrange to obtain the ice with the assistance of a corrections officer demonstrates knowledge and disregard

8

of a serious medical need.

Although it is unfortunate that Plaintiff did not receive the biopsy report in a timely manner, the failure to receive the report of the negative result does not constitute deliberate indifference by any of the named Defendants. In his verified Complaint Plaintiff states that he "[g]ave a letter to the Warden in person stating what happened 10/13/05." There is no evidence, however, that either the Warden or Dr. Regier were responsible for or could have remedied the delay in the transmittal of the biopsy report. [4] Furthermore, plaintiff has not presented any verifying medical evidence that he suffered any detrimental effect from the delay in communicating the negative biopsy report, and the absence of such evidence of a detrimental effect precludes recovery on a § 1983 claim. *See Crowley v. Hedgepeth*, 109 F.3d 500, 502 (8th Cir. 1997).

Plaintiff also complains of a delay in receiving toiletry items and a change of clothes and complains of a delay in receiving information that he could request a bottom bunk. Viewing the evidence in the light most favorable to Plaintiff, none of these complaints allege an Eighth Amendment violation. In addition Plaintiff fails to link any of these complaints to any person named as a defendant, and this failure alone warrants dismissal of these complaints. *See In re Tyler*, 839 F.2d 1290, 1292 (8th Cir. 1988). For all of the reasons set forth in this Memorandum Opinion, Defendants are entitled to summary judgment.[5] Accordingly,

---

[4] A supervisor incurs liability for a violation of the Eighth Amendment only when the supervisor is personally involved in the violation or when the supervisor's corrective inaction constitutes deliberate indifference toward the Eighth Amendment violation. *Boyd v. Knox*, 47 F.3d 966 (8th Cir. 1995).

[5] The defendants sued in their individual capacities contend that they are entitled to qualified immunity. "Qualified immunity shields state officials from civil liability when 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Doe v. Gooden*, 214 F.3d 952, 954 (8th Cir. 2000)(quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Hayes v. Long*, 72 F.3d 70, 72 (8th Cir. 1995). Where a defendant seeks immunity, a ruling should be made early in the case so the costs and expenses of trial may be avoided where qualified immunity is dispositive. *Saucier v. Katz*, 533 U.S. 194, 200 (2001).The first consideration in determining whether qualified immunity applies is as follows: "'Taken in the light most favorable to the party asserting the injury, do the facts alleged show the [officials'] conduct violated a constitutional right?'" *Forrester v. Bass*, 397 F.3d 1047, 1054 (8th Cir.2005)(quoting *Saucier v. Katz*, 533 U.S.

9

IT IS ORDERED:

1. That Plaintiff's requests for court appointed counsel are denied;

2. That Defendants' motion  to strike the unsworn statement of inmate Scott Mollman ( Doc. 73) is denied; and

3. That Defendants' motions for summary judgment (Doc. 58 and 70) are granted.

Dated this **21ˢᵗ** day of September, 2006.

BY THE COURT:

Lawrence L. Piersol
United States District Judge


ATTEST:
JOSEPH HAAS, CLERK
BY: _Sharon Jours_
(SEAL)  DEPUTY

---

at 201)). Since this Court has determined Plaintiff did not suffer a constitutional right, the defendants sued in their individual capacities are entitled to qualified immunity.